Grafton
No. 90-206

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH S. HAAS, JR.

July 26, 1991

*John P. Arnold,* attorney general (*David S. Peck,* senior assistant attorney general, on the brief and orally), for the State.

*Randall & Bownes,* of Laconia (*David H. Bownes* on the brief and orally), for the defendant.

BATCHELDER, J.   The defendant was found guilty by a jury in the Superior Court (*Morrill,* J.) of the offenses of simple assault, RSA 631:2-a, and resisting arrest, RSA 642:2. The defendant raises three issues on appeal. First, he claims error in the trial court's failure to instruct the jury that it must consider the conduct and knowledge of the officer's superior, the chief of police. Second, he claims error in the trial court's declining to instruct the jury on the defendant's theory of defense, which entitled him to use force to the extent believed necessary to prevent a reasonably apparent unlawful taking of personal property. Finally, he contends that the trial court erred in failing to instruct on jury nullification after receipt of a question from the jury. For the reasons that follow, we affirm.

The criminal charges in this case had their origin in an altercation between the defendant and Ashland police officer Charles Tarr, on

November 8, 1988, when the officer was supervising a tow truck's removal of the defendant's automobile from a private parking lot owned by Richard and Linda Pare. The relationship between and among the principals involved in the underlying dispute has deeper roots. The defendant is for all practical purposes the owner of rental property on Main Street in Ashland which was conveyed to him, in the first instance, and was later conveyed to a corporation which he controls, the Cathedral of the Beechwoods. The Pares were commercial tenants in the premises at one time, and at one point made an abortive attempt to purchase the property at a tax sale conducted by the town. During the pendency of the dispute concerning the validity of the tax sale, the defendant raised questions relating to the disposition and apportionment of rental income from the property when it was under the control of the Pares. Although the tax title dispute was resolved by agreement, resulting in the restoration of control of the premises to the defendant, he nevertheless still claimed entitlement to monies, or an accounting of them, from the Pares. We need not and do not consider the validity, if any, of such a claim. The Pares subsequently purchased a business property adjoining the defendant's property, separated only by a right-of-way, at the rear of which property they maintain a parking lot for their use and that of the customers of the florist shop which they maintain on the premises. Prior to the purchase of the florist shop property by the Pares, the defendant had from time to time, with permission from the previous owner, parked his car in the parking lot, the title to which passed to the Pares with the purchase of the shop.

On November 6, 1988, Mr. Pare erected a "No Parking" sign which faced the parking lot at the rear of the florist shop. Later that day, the defendant removed the sign, took it to his apartment, and called the Ashland Police Department, asking them to deliver a "sign receipt" to the Pares. A charge of criminal trespass was brought against the defendant in the Plymouth District Court the next day, based on his removal of the sign. At the bail hearing, the court ordered, as one of the conditions of bail, that the defendant not interfere with the persons of Richard or Linda Pare or any of the State's witnesses. On November 8, Mrs. Pare observed the defendant's car parked in the lot in question and called the police department. Upon receipt of the complaint from Mrs. Pare, Chief Paquette instructed Officer Tarr to go to the scene and said, "If that's Joe Haas's vehicle, he is not supposed to be there and I want it towed."

Officer Tarr proceeded to the scene, saw the defendant's car parked in front of the "No Parking" sign, and made arrangements to

get a tow truck. The defendant arrived shortly thereafter. It was at this point that things generally began to deteriorate. The defendant asked Officer Tarr, "Did you order this car to be removed?" The officer made an affirmative response, whereupon the defendant stated, "I'm claiming this land by adverse possession." The defendant, apparently subscribing to the view that the best defense is a good offense, then placed his hand on Officer Tarr's shoulder and said, "You're under arrest for grand theft auto." The officer testified that the defendant became agitated and belligerent and eventually struck the officer in the chest with his forearm. The officer told the defendant he was under arrest and a struggle ensued. The defendant testified that a point was reached when "I said, 'Yeah, enough is enough,' and I got the stun gun and I zapped him." Assistance was summoned, and eventually the defendant was subdued and placed in the police car. Officer Tarr suffered from injuries resulting from having been "zapped" in the abdomen.

The recitation of the lengthy factual grounding of this case is necessary to an understanding of the relationship existing between and among Officer Tarr, the defendant, and the automobile at the time and place of the altercation. Beyond this, there is less to this case than meets the eye.

■ All three of the defendant's arguments involve requests for jury instructions which were declined by the trial court. Whether a requested instruction will be given is a decision to be made by the trial court in the sound exercise of its discretion. *State v. Wood*, 132 N.H. 162, 164, 562 A.2d 1312, 1314 (1989).

■ First, the defendant argues that the trial court erred in failing to give his requested instruction that Officer Tarr was chargeable with the knowledge of his superior (*i.e.*, the chief of police). We disagree.

Chief Paquette told Officer Tarr that a court order had been issued the previous day which prevented the defendant from parking in the lot behind the flower shop. In reality, the order forbade the defendant from having any contact with the Pares, but did not specifically mention the parking area. The defendant contends that Officer Tarr's conduct cannot be isolated from that of his superior, because Chief Paquette "knew or should have known" that no such court order existed. We do not accept the defendant's contention, however, that Officer Tarr's actions were therefore improper. Even if the court order did not specifically refer to parking in the lot behind the flower shop, it did prohibit the defendant from contact with the Pares,

which, as the scenario illustrates, was precisely the result of his continued attempts to park his vehicle in the lot. Chief Paquette's dispatch of Officer Tarr to have the defendant's vehicle towed was within the sound exercise of his duty as a law enforcement officer, and we find no error in his conduct.

Second, the defendant maintains that the trial court erred in failing to instruct the jury that he was entitled to use force to prevent what reasonably appeared to be an unlawful taking of his property. The State contends that RSA 642:2 prohibits such use of force against a law enforcement official.

At common law there was a well recognized view that force could be lawfully used to resist an unlawful arrest.

> "The English common-law right to resist an unlawful arrest became established at least by 1710, *The Queen v. Tooley* (1709) 2 Ld Raym 1296, 92 Eng Reprint 349, and during the nineteenth and early twentieth centuries, it became the established rule in the United States as well. In *Bad Elk v. United States* (1900) 177 US 529 . . . for example, the United States Supreme Court held that the defendant, whose murder conviction was reversed, had the right to use such force as was absolutely necessary to resist an attempted illegal arrest."

Annotation, *Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest*, 44 A.L.R. 3d 1078 (1972).

Although this rule prevails in some jurisdictions today, it has been modified by court decision and, as here, by statute in many others. *See, e.g., State v. Koonce*, 89 N.J. Super. 169, 214 A.2d 428 (N.J. Super. Ct. App. Div. 1965) (private citizen may not use force to resist arrest by police officer, whether or not arrest is illegal). Legislation in modification of the common law as it is applicable to the type of situation presented in these proceedings has, without any doubt, recognized that police identifiable as such stand in a different legal relationship to the general public than does the ordinary citizen. This special status does not, however, come without cost, because wrongdoing by the officer in dealing with the public at large may subject the officer, as well as the government, to liability and the payment of damages. A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.

RSA 642:2 is instructive in the context of this discussion. "A person is guilty of a misdemeanor when he knowingly or purposely interferes with a person recognized to be a law enforcement official seeking to effect an arrest or detention of himself or another regardless of whether there is a legal basis for the arrest." *Id.* This statute modifies the common law doctrine that a person could lawfully use all force necessary to resist an unlawful arrest, as described in *Bad Elk v. United States supra*, and points to a preferred forum in the courts for the resolution of such matters. This view is emphasized in RSA 594:5, which states: "If a person has reasonable ground to believe that he is being arrested and that the arrest is being made by a peace officer, it is his duty to submit to arrest and refrain from using force or any weapon in resisting it, regardless of whether there is a legal basis for the arrest."

■ With this background, we turn to the defendant's argument that his conduct in resisting the removal of his vehicle by the tow truck under the direction of the uniformed officer is protected by the language of RSA 627:8. "A person is justified in using force upon another when and to the extent that he reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of his property, or criminal mischief, or to retake his property immediately following its taking . . . ." *Id.* To say that a statute designed to permit and condone self-help as a way of protecting oneself from the actions of tort-feasors, wrongdoers, and run-of-the-mill miscreants authorizes the use of force against a police officer discharging his duties in the removal of an automobile from disputed turf is to stretch the statute past the breaking point. The common law precursor to the statute is sufficient to deny the defendant's claim. According to the comments of the commission for the revision of the criminal laws, as set forth in its 1969 report to the General Court on the proposed Criminal Code, the statute under consideration is consistent with the early decision of this court in *State v. Richardson*, 38 N.H. 208 (1859), holding that force could not be used to prevent a sheriff from attaching property under a writ of attachment when the authority of the sheriff was apparent. It follows that Officer Tarr was acting under the lawful authority of his office, and whether Chief Paquette's instructions were proper is a matter to be resolved in court and not in the street. There is ample protection to the public from unlawful seizure of property by law enforcement agents, either by way of civil claims for damages or by way of the appropriate application of the exclusionary rule.

Finally, the defendant contends that the trial court erred in failing to instruct the jury on nullification, the act by which a jury acquits a defendant even if its verdict is contrary to the law and the facts. We disagree.

During the course of deliberations, the jury submitted the following question to the trial court: "1) If we all believe that Joe Haas was 'set up' by an arrogant police chief, is that a basis for reasonable doubt relative to the question of simple assault and resisting arrest[?]" The trial court responded in writing as follows: "Question 1 is a question of fact. You must decide the facts and then apply the law as contained in my instructions to those facts and in this way reach fair and just verdicts." The defendant argues that the trial court's response effectively removed nullification from the jury's consideration. This argument, however, is without merit, because the judge's instruction included the language of the *Wentworth* charge, which states that if the State has proved each element of the offense beyond a reasonable doubt, the jury *should* find the defendant guilty. *State v. Wentworth*, 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978).

■■ To the extent he argues for a further instruction, "'[j]ury nullification is neither a right of the defendant, nor a defense recognized by law.'" *State v. Brown*, 132 N.H. 520, 527, 567 A.2d 544, 548 (1989) (quoting *State v. Mayo*, 125 N.H. 200, 203, 480 A.2d 85, 87 (1984)). Hence, a defendant is not invariably entitled to a nullification instruction. *State v. Cote*, 129 N.H. 358, 368, 530 A.2d 775, 780 (1987). It is within the sound discretion of the trial court "to determine whether or not the facts of a particular case warrant such an instruction when it has been requested by a party." *State v. Mayo supra*. We find nothing improper in the trial court's response to the jury's question and, accordingly, we hold that the defendant was not denied the opportunity for the jury to exercise nullification.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.