Auburn District Court
No. 2000-464

### THE STATE OF NEW HAMPSHIRE

v.

### DANIEL BRIGGS & a.

Argued: November 13, 2001
Opinion Issued: February 11, 2002

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Backus, Meyer, Solomon, Rood & Branch*, of Manchester (*B J Branch* on the brief and orally), for the defendants.

NADEAU, J. The defendants, Daniel Briggs, Dana Briggs and Bradley Briggs, appeal their convictions in Auburn District Court (*LeFrancois*, J.) on charges of obstructing government administration. *See* RSA 642:1 (1996). We affirm.

The following facts are supported by the record. On September 14, 1999, James McKenzie, an officer of the New Hampshire Fish and Game Department, was on duty "shining" fields by illuminating them with a hand-held light to check for deer or illegal activity. With him was a civilian friend named Charlie Johnson, who testified that he rode along "to check out the duties that the officers do on their routine visits." It was the night before the start of archery season and Johnson had two deer stands in close proximity to the defendants' property.

At approximately 9:30 p.m., Officer McKenzie was shining fields owned by the defendants. Defendants Dana and Bradley Briggs, who saw Officer McKenzie's truck drive toward their fields, drove there to see what was happening. They encountered Officer McKenzie's truck leaving one of their fields. They got out and approached Officer McKenzie's truck, which they then realized was a fish and game vehicle. Officer McKenzie, while not in his uniform shirt, was wearing a fish and game shirt with a badge embroidered on it.

Dana told Officer McKenzie that he was destroying crops and the two argued over whether Officer McKenzie had a right to be in the defendants' field. While the testimony conflicted as to how irate either of them was and who became agitated first, Dana admitted that they "were hollering."

Dana instructed Bradley to call their father, defendant Daniel Briggs, and, when Officer McKenzie informed the two men that he was going to leave, Dana told him he wasn't going anywhere until their father arrived. When Officer McKenzie attempted to drive around the Briggs' truck, Dana directed his brother to block the field's exit (the "barway") with their vehicle. Bradley complied, trapping Officer McKenzie's truck in the field.

Officer McKenzie radioed the Deerfield police for assistance. At some point thereafter, Daniel arrived, as did Dana's wife, Tiffany, and his brother, Kevin. Daniel approached Officer McKenzie's vehicle and the two began arguing over whether Officer McKenzie had destroyed crops and what right he had to be there. The confrontation became quite heated, with both parties raising their voices. Officer McKenzie conceded that he "used some obscenities" and there was testimony that Daniel swore repeatedly.

Deerfield Police Officer Joshua McLain arrived in response to Officer McKenzie's call for assistance. Officer McLain ordered Daniel to move the vehicles so that Officer McKenzie could leave. Daniel either refused or ignored the demand. He told Officer McLain that he wanted Officer McKenzie charged with trespassing, which Officer McLain refused to do. Finally, Officer McLain called for back-up. When assistance arrived, the defendants were taken into custody.

Each of the defendants was charged with, among other things, obstructing government administration in violation of RSA 642:1. Following a bench trial, each of the defendants was found guilty on that charge.

On appeal, the defendants argue that there was insufficient evidence that they acted with the requisite mental state to commit the crime of obstructing government administration. To prevail on an insufficiency of the evidence argument, "the defendant[s] must show that no rational trier of fact could have found guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the State." *State v. Cort*, 145 N.H. 606, 608-09 (2000) (quotation omitted).

RSA 642:1 provides, in part: "A person is guilty of a misdemeanor if he uses force, violence, intimidation or engages in any other unlawful act with a purpose to interfere with a public servant, as defined in RSA 640:2, II, performing or purporting to perform an official function . . . ." The mental state "purposely" is defined in RSA 626:2, II(a) (1996) as follows: "A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element."

The defendants argue that the State failed to prove that they acted purposely to interfere with a public servant where their "purpose [in]

detaining Officer McKenzie's vehicle was to preserve proof that a crime had been committed, not to prevent him from performing official duties." With respect to intent, however, the statute requires only a conscious object to interfere with the public servant; the defendant's underlying or ultimate motive for doing so is irrelevant. *Cf. State v. Kelley*, 120 N.H. 14, 17 (1980).

There was sufficient evidence to find that the defendants' conscious object was to prevent Officer McKenzie from driving his truck out of the field. In carrying out that conscious object, the defendants, in fact, interfered with an officer who was performing an official function. It was Bradley, acting at the direction of Dana, who initially moved their truck in front of the officer's vehicle. Dana testified that he "chose to keep [Officer McKenzie's] truck there." Bradley stated that he "didn't want [Officer McKenzie's] truck on the other side of my truck when the police showed up." Thus, both Dana and Bradley had a conscious object to prevent Officer McKenzie from moving his truck.

■ At trial, Bradley answered affirmatively that it was "fair to say that once [his] dad got there [he] kind of let him take over." Daniel, in turn, testified that when he arrived on the scene, he did not direct his sons to move their vehicle. In fact, when asked whether it was "fair to say ... that [he] made it clear [he] did not want that truck moved," Daniel answered, "Absolutely." He also testified that when Officer McLain told him to move the truck, he "[b]asically ... ignored it." We conclude that there was sufficient evidence to find that each of the defendants acted "purposely."

The defendants next challenge the sufficiency of the evidence that Officer McKenzie was performing an official function. Based upon testimony that: (1) it was Officer McKenzie's last stop that evening; (2) it was the night before opening day of hunting season; and (3) Officer McKenzie had with him a civilian who had two deer stands set up in close proximity to the defendants' property, they argue there exists reasonable doubt that Officer McKenzie was performing an official function in the defendants' fields.

■ Officer McKenzie testified that he was shining fields on September 14, and that "[i]n [his] line of duty, [he] ... checks on fields to see if there's deer or any illegal activity going on in these fields." He testified that he checked approximately twenty fields that night, ending with the defendants' fields. He further testified that he is permitted under fish and game regulations to have people ride in his vehicle while he is on duty, that he does so ten to twenty times a year, and that Charlie Johnson signed a waiver of liability form during the ride. We cannot say that no rational

trier of fact could have found beyond a reasonable doubt that Officer McKenzie was performing an official function while on the defendants' land that evening.

 The defendants next challenge the sufficiency of the evidence that their detention of Officer McKenzie prevented him from performing any official function because Officer McKenzie testified that if he had been allowed to leave the defendants' field, he would have dropped off Charlie Johnson and immediately gone home. We need not decide whether or at what point on Officer McKenzie's return home his performance of official functions might have ceased. Having upheld the determination that Officer McKenzie was performing an official function in the defendants' fields, we conclude that he was still in the performance of that function while attempting to exit the field. *Cf. State v. Patterson*, 758 So. 2d 955, 961 (La. Ct. App. 2000), *rev'd on other grounds*, 783 So. 2d 1243 (La. 2001). In *Patterson*, the court found that the defendant interfered with officers making a lawful arrest even though the interference occurred more than five minutes after the arrestees were placed in the police car because restriction to "the precise moment police take the person into custody, or immediately prior thereto ... is a hypertechnical and unrealistic interpretation of the statute." *Id.* The court found that the officers "were engaged in the 'process' of arresting the two subjects" at the time the defendant "interjected himself into the operation." *Id.*

 The defendants next argue that RSA 642:1 is unconstitutionally overbroad because, by prohibiting interference with a public servant merely purporting to perform an official function, the statute makes it unlawful to stop a public servant who, although purporting to perform an official function, is actually engaging in illegal activity. Alternatively, the defendants argue that we should carve out an exception to the crime of obstructing government administration for instances in which the defendant "has a good faith belief that the public servant has committed or is committing a crime." "A statute is void for overbreadth if it attempts to control conduct by means which invade areas of protected freedom." *State v. Pike*, 128 N.H. 447, 450-51 (1986) (quotation and brackets omitted). The defendants invoke "the right of a private property owner to take reasonable steps to protect his property" both in support of their overbreadth argument and as a basis for carving out an exception to the crime. Because the defendants do not have a protected freedom to interfere with an officer performing an official function, we reject both arguments. *Cf. State v. Wong*, 125 N.H. 610, 622 (1984) (rejecting overbreadth argument where, "[i]n prohibiting a person from causing

death as a consequence of driving an automobile while under the influence of intoxicating liquor, [the statute] does not infringe a protected freedom").

The defendant in *State v. Haas*, 134 N.H. 480 (1991), invoked a similar alleged right in appealing his convictions for simple assault and resisting arrest arising out of a police officer's supervision of the towing of the defendant's car. Haas claimed that the trial court should have instructed the jury that "he was entitled to use force to prevent what reasonably appeared to be an unlawful taking of his property." *Id.* at 484. We disagreed, observing:

> Legislation in modification of the common law as it is applicable to the type of situation presented in these proceedings has, without any doubt, recognized that police identifiable as such stand in a different legal relationship to the general public than does the ordinary citizen. This special status does not, however, come without cost, because wrongdoing by the officer in dealing with the public at large may subject the officer, as well as the government, to liability and the payment of damages. A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.

*Id.*

An owner of property is entitled to take reasonable measures to determine whether others who go upon the property are there for a lawful purpose and to determine whether they have caused damage to the property. When a landowner learns that the person upon his property is a law enforcement officer, however, the landowner is not entitled to interfere with the officer. When Bradley and Dana Briggs caused their truck to be placed in a position which prevented Officer McKenzie from driving off the property, they were in fact interfering with the officer's performance of his official functions. That the officer may have damaged the land in the course of his activities does not justify their conduct.

This incident escalated into an unnecessary confrontation because of the continuous uncivil conduct of the defendants and the intemperate response of the fish and game officer. Law enforcement officers are entitled to perform their duties without hostile challenges from members of the public. Officers of the law, on the other hand, are expected to act with civility even in the face of incivility. The absence of that civility, however,

does not change the fact that the evidence in this case was sufficient to convict each defendant beyond a reasonable doubt.

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.