Portsmouth District Court
No. 98-461

## THE STATE OF NEW HAMPSHIRE

v.

## PAUL HILL

July 2, 2001

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State.

*Jenifer Bensinger Ackerman*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

*Joshua L. Gordon*, of Concord, and *Barbara A. Bradshaw*, of Durham, on behalf of the New Hampshire Civil Liberties Union, for Patricia Welsh, as *amicus curiae*.

BROCK, C.J. The defendant, Paul Hill, appeals his convictions in Portsmouth District Court (*Warhall*, J.) for driving while intoxicated, second offense, RSA 265:82-b (1993 & Supp. 2000); driving after revocation, RSA 263:64 (1993); disobeying a police officer, RSA 265:4 (1993); and false report to law enforcement, RSA 641:4 (1996). On appeal, the defendant asserts that: (1) evidence of his identity and motor vehicle record should have been excluded as fruits of an illegally obtained statement; (2) the false report to law enforcement charge should have been dismissed because the State failed to establish the necessary statutory elements; and (3) the defendant's motion for a mistrial should have been granted because the prosecutor impermissibly commented on the defendant's post-arrest silence. We affirm.

The following facts were either adduced at trial or appear in the record. On December 4, 1997, four police officers were dispatched to the Fielder's Choice Bar in Derry in response to a report of a disturbance. During their investigation, Officer Sinclair saw the defendant leave the bar. The defendant appeared to be unsteady on his feet, as though he had had too much to drink.

Moments later, Officer Sinclair saw the defendant drive away from the bar. Believing that the defendant was impaired by alcohol, Officer Sinclair attempted to stop him by shining his flashlight on him and yelling "yo" repeatedly. The defendant did not stop. As the vehicle drove past him, Officer Sinclair illuminated the driver's face with the flashlight and saw the defendant.

A second officer, Christine Krawec, put on her cruiser's lights and sirens and followed the defendant. When he finally pulled into a driveway and stopped, Officer Krawec immediately pulled in behind the vehicle with her lights and siren still on. Officer Krawec testified that she saw the same man who drove the vehicle away from the bar get out of the driver's side door of the truck. Officer Krawec twice ordered the man to stop. He complied with the second request. At that time, when asked for his name, the man said he was "Michael Micalizzi," provided Officer Krawec with a date of birth and said he had no identification with him.

When Officer Sinclair arrived at the scene, he administered field sobriety tests. The defendant failed four of the five tests. Officer Sinclair then arrested the defendant for driving while intoxicated and for failing to obey a police officer.

The defendant was taken to the police station for booking. Once there, he was asked to complete the standard administrative license suspension ("ALS") form used to advise people of their administrative license suspension rights. On this form, the defendant once

again identified himself as "Michael Micalizzi" with a mailing address in Wilmington, Massachusetts. The defendant then went to the hospital for a blood test, where he again identified himself as "Michael Micalizzi." The blood test revealed a blood alcohol concentration level of .20.

The defendant and Officer Sinclair returned to the police department to complete the normal booking procedures, and the defendant again identified himself as "Michael Micalizzi." He provided the police with a social security number and a May 5, 1957 birthdate. Officer Sinclair ran a record check for Michael Micalizzi. Because of discrepancies in the record, Officer Sinclair suspected that the defendant had provided a false name. Officer Sinclair confronted the defendant, telling him, "you are not going anywhere until we find out who you are." The police had not given the defendant *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436 (1966), when Officer Sinclair made this statement.

The defendant immediately responded by providing his correct name, birth date and social security number. He explained that "the reason he had lied was because of a previous DWI conviction, and that now because of what had happened, he was going to have to go to jail." Officer Sinclair began a second booking sheet, which was completed by another officer. The defendant was charged with four class A misdemeanor offenses, including giving a false report to a police officer.

Prior to trial, the Court (*Lawrence*, J.) granted the defendant's motion to suppress his statements regarding his identity and reason for lying on the grounds that they were the product of a custodial interrogation in violation of *Miranda*. The court, however, denied the defendant's subsequent motion to suppress use of his name and status as obtained through motor vehicle records, court records "or other means." Therefore, prior to trial, the defendant stipulated to the fact that he was Paul Hill, that he had a prior driving while intoxicated conviction, that his driver's license had been revoked and that on December 4, 1997, he knew that his license had been revoked.

At trial, the defendant raised the defense that his girlfriend, Dawn Rosa, had been the driver of the vehicle. She testified that she had driven the defendant to the Fielder's Choice Bar that evening, and that she had remained with him at the bar while he had a beer and she had a non-alcoholic drink. The defendant asked her to wait in the vehicle, which she did. A few moments later, the defendant left the bar, and got into the vehicle. Ms. Rosa testified that she drove because the defendant did not have a license and had been

drinking. According to Ms. Rosa, she pulled into her driveway, turned the vehicle off, removed the keys and left the lights of the vehicle on so that she could get her dogs from their pen. She did not recall seeing police lights or hearing sirens between the time she left the bar and the time she pulled into the driveway. She testified that she saw the police when she was in the dog pen, and that she put the dogs in the house and walked out the front door. There she saw the police administering field sobriety tests to the defendant. Ms. Rosa acknowledged on cross-examination, however, that she did not contact either the police or the county attorney between the time the defendant was arrested and the date of trial to inform them that she had driven the truck that night.

The jury convicted the defendant on all four counts.

## I. Evidence of The Defendant's Identity and Motor Vehicle Record.

In granting the defendant's motion to suppress, the trial court concluded that given the nature of the charge of false report to law enforcement, Officer Sinclair's statement that the defendant "would not be going anywhere" until he properly identified himself was tantamount to interrogation. Therefore, the court held that "without the benefit and protection of Miranda warnings, any statements made by the defendant in response to Officer Sinclair's indirect interrogation should be suppressed."

The defendant also moved to exclude evidence of his name and his status as obtained through motor vehicle records, court records "or other means." He argued that all the identity information was derivative evidence and "fruit of the poisonous tree." At the hearing on his motion to exclude derivative evidence, the State relied upon the testimony Officer Sinclair had given at the hearing on the original motion to suppress.

The trial court denied the defendant's motion, stating:

> With regard to the issue of inevitable discovery, the Court, under *New Hampshire Rules of Evidence 201* takes judicial notice that the defendant would not have been released and no bail would have been set until his identify [*sic*] was ascertained. The Court is able to take judicial notice of this fact based on more than twenty years experience in making bail determinations in New Hampshire District Court criminal cases and because the initial information obtained from the defendant immediately following the stop was suspected by the police to be inaccurate. Given this sort of suspicion by the police and assuming for the sake of

discussion, that the defendant refused to say another word to the police in the course of his arrest and booking, he would not have been released until his identity had been ascertained. Thus the State has satisfied its burden to prove by a preponderance of the evidence that the defendant's identity would have inevitably been discovered.

The defendant argues on appeal that: (1) the trial court erred when it took judicial notice of the "fact" that the defendant would not have been released had his identity not been obtained; and (2) that the State failed to carry its burden of proving that the defendant's identity would have been inevitably discovered because it put on no evidence at the hearing. The State has not appealed the trial court's decision granting the defendant's motion to suppress his statement regarding his identity and the reason for his untruthfulness. Rather, the State argues that the exclusionary rule does not apply to the defendant's identity. The State also argues that even if identity could be excluded as "fruit of the poisonous tree," it should not be excluded in this case because the defendant's identity and motor vehicle records would inevitably have been discovered.

Rule of Evidence 201 allows a court to take judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.H. R. EV. 201(a). The "not subject to reasonable dispute" requirement "serves a tradition of caution that the trial techniques of rebuttal evidence, cross-examination, and argument not be capriciously denied a party." N.H.R. EV. 201(a) Reporter's Notes.

■ We agree with the defendant that whether he would have been released before his identity was discovered is subject to dispute. At the hearing on his motion to suppress, the defendant argued that there are occasions in courts across the country in which people are arraigned and plead out cases under false names. The court therefore erred when it took judicial notice that the defendant would not have been released until his identity was ascertained. Because we conclude that the record otherwise compels the conclusion that the police officer would have discovered the defendant's identity, however, we affirm the trial court's decision not to exclude evidence of the defendant's name and status.

While the federal courts have "expressly left open the question of the admissibility of physical evidence obtained as a result of an interrogation conducted contrary to the rules set forth in

*Miranda," Patterson v. United States*, 485 U.S. 922, 922 (1988), we have suggested that under Part I, Article 15 of our State Constitution, the evidentiary fruits derived from a *Miranda* violation are inadmissible at trial. *See State v. Gravel*, 135 N.H. 172, 180, 184 (1991) (because evidence obtained in violation of *Miranda* safeguards may not be used to supply probable cause for search warrants, evidence obtained from tainted search warrant is inadmissible at trial). Unlawfully obtained evidence may be admitted, however, if the police would have inevitably discovered the evidence. *See State v. Holler*, 123 N.H. 195, 200 (1983) (gun discovered on the floor of the defendant's home protruding under a couch with butt readily observable would inevitably have been discovered during a subsequent legal search); *State v. Beede*, 119 N.H. 620, 629-30 (1979), *cert. denied*, 445 U.S. 967 (1980) (upholding court's refusal to suppress dead body discovered as a result of illegal search because, given decaying body's odor, it was inevitable that a private person would have discovered the body and reported it).

Although the State did not present evidence at the hearing on the defendant's motion to exclude derivative evidence, the State did refer the court to the testimony offered by Officer Sinclair at the suppression hearing and argued that the defendant could not possibly have pled out to a lesser charge under the name Michael Micalizzi. At the suppression hearing, Officer Sinclair testified that he was suspicious that he had received a false name from the defendant because he had done a license check with the name Michael Micalizzi and the social security number the defendant had given him, and the address and middle initial the defendant had given him did not match. Specifically, he testified that at the police station:

> We ran a Mass license check, New Hampshire NBR with the information given and it came back no response. I've been doing things long enough to know that pretty much every person on the face of the earth has some driver history at some point. You're able to verify, through these types of checks, that this person does exist. And it's my experience that when you get no response you've likely been given a false name.

> Officer Sinclair testified that these suspicions caused him to start[] digging a little bit further. I asked him for a Social Security number, his, and he gave me one. And when we ran a Massachusetts license check, based on that Social Security number, we did get a response. The response was for a

Michael Mickelizi, but the date of birth was different than what he had given. He had given 5/5/57, the response out of Massachusetts showed a date of birth of 5/5/59. And upon examining the printout further, I noticed that the middle initial of that person, the real Michael Mickelizi was different than what he had given. He had given his middle initial as being D as in David, when the printout showed it being R as in Robert. He had also given an address, a Main Street address in Massachusetts, and a numerical address he had given being 335 Main Street was different from what was on the printout. The printout had, I believe, 849 Main Street as being Michael Mickelizi's address.

Officer Sinclair also testified that these discrepancies caused him some concern and that he "felt that [the defendant] had provided a false name, or some false information as far as who he was."

When asked whether it is possible to bail someone out before they've been identified, Officer Sinclair responded in part:

Has it ever happened where somebody had successfully given us a false name beyond the point of release? Yes. And then that's dealt with afterwards, most oftentimes by the person whose information they gave, coming forward to the police department and saying hey, I'm me. You didn't arrest me, you arrested so and so who used my name. But we would never release somebody that we believed had falsely identified themselves.

Finally, Officer Sinclair noted that the defendant's girlfriend had been at the scene when the defendant had been arrested, and that she would have been a logical place to begin an investigation into the defendant's identity.

 Because we conclude that the evidence compels a finding that the defendant's identity would inevitably have been discovered, we affirm the trial court's refusal to suppress the use of the defendant's name and his status as obtained through motor vehicle records, court records "or other means."

*II. False Report to Law Enforcement*

The defendant next contends that RSA 641:4 is not applicable to the facts of this case. RSA 641:4 provides that any individual who "[k]nowingly gives or causes to be given false information to any law enforcement officer with the purpose of inducing such officer to believe that another has committed an offense" is guilty of a

misdemeanor. The defendant contends that the statute does not apply to a situation in which the defendant misidentifies himself to the police. We disagree.

The provisions of the Criminal Code are "construed according to the fair import of their terms and to promote justice." RSA 625:3 (1996). We interpret statutory language in accordance with its common usage. *See State v. Dixon*, 144 N.H. 273, 283 (1999). "When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent." *Id.* (quotation omitted).

■ In this case, the defendant provided the name and address of someone later described as his friend when asked to identify himself. Had discrepancies not appeared as the information was being entered into the system, the defendant might have left the station and induced the police to file charges against his friend. It was clearly the defendant's intent to convince the police that someone other than he had been driving the vehicle. That the false information did not actually impede the investigation is irrelevant. The State properly concluded that the defendant's actions violated the statute.

■ The defendant also contends that had the State sought to charge him under RSA 265:4, I(b), which prohibits an individual "while driving or in charge of a motor vehicle" from "giv[ing] false information to a law enforcement officer that would hinder the law enforcement officer from properly identifying the person in charge of such a motor vehicle," it could have sufficiently alleged that offense in a complaint. While RSA 265:4, I(b) addresses misleading conduct related to a motor vehicle, RSA 641:4 addresses certain misleading conduct in the context of all criminal offenses. That the State might have charged the defendant under another statute is irrelevant. In this case, the defendant's conduct also violated the provisions of RSA 641:4.

### III. Comment on the Defendant's Post-Arrest, Pre-Miranda Silence

During its closing argument, the State commented on the defendant's silence after his arrest as follows:

[After the defendant is] booked, he's still lying. Not once does he say, geeze, man, I wasn't behind the wheel. Geez. Go check with Dawn. I wasn't behind the wheel. Well, it's right here. He's saying, oh, no. This form which is going to be filled out, which, you know, I could make it all go away, I just

> realized I wasn't the guy behind the wheel. He didn't tell him that, because he knows he was behind the wheel.

The defendant objected and moved for a mistrial, arguing that the State's comment on his silence violated his due process rights not to have his post-arrest silence used against him. The Court (*Warhall*, J.) denied the motion. The defendant did not request that the court give a curative instruction to the jury.

On appeal, the defendant argues that the State's comments regarding his silence at the police station improperly urged the jury to infer that he was the operator of the vehicle. According to the defendant, the direct use of his silence to establish an element of an offense violates his due process rights under Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution. Therefore, the defendant argues that the trial court erred when it denied his request for a mistrial. The State argues that its closing argument did not violate the defendant's due process rights, and that even if it did, any reference to the defendant's failure to inform the police he was not driving was harmless.

Before addressing the substance of the defendant's argument, we must establish the specific framework of analysis. We have stated that this Court "has the power to interpret the New Hampshire Constitution as more protective of individual rights than the parallel provisions of the United States Constitution." *State v. Ball*, 124 N.H. 226, 231-32 (1983). When a defendant specifically invokes the State Constitution, we will consider those constitutional claims before addressing federal claims, relying on federal law only to aid our analysis. *Id.* Because the State Constitution is at least as protective as the Federal Constitution in this area, we need not reach the federal issue. *See Wainwright v. Greenfield*, 474 U.S. 284 (1986); *State v. Laurie*, 135 N.H. 438, *cert. denied*, 506 U.S. 886 (1992).

This Court has not yet considered under what circumstances the use of a defendant's silence will be found to violate the due process clause of Part I, Article 15 of the New Hampshire Constitution. The United States Supreme Court has, however, held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). The Court has also held, however, that where a defendant testified at trial that he acted in self-defense, the government was entitled to impeach the defendant's story by the

defendant's pre-arrest silence in not reporting the stabbing for two weeks. *See Jenkins v. Anderson*, 447 U.S. 231 (1980). According to the Court, this is not a denial of fundamental fairness under the Due Process Clause of the Fourteenth Amendment because unlike what occurred in *Doyle*, "no government action induced petitioner to remain silent before arrest." *Id.* at 240. Furthermore, the Court has held that a defendant is not denied due process where the government uses his post-arrest silence for impeachment purposes when the defendant had not been given *Miranda* warnings during the period in which he remained silent. *See Fletcher v. Weir*, 455 U.S. 603 (1982).

*Doyle* and its progeny rest on the theory that *Miranda* warnings themselves carry an implicit assurance that silence will not be penalized. *See State v. Brown*, 128 N.H. 606, 611-12 (1986). Therefore, a defendant who has not received *Miranda* warnings cannot rely on *Doyle* in support of a claim that the use of his silence violates his right to due process under the Fourteenth Amendment. *Id.; see also Combs v. Coyle*, 205 F.3d 269, 280 (6th Cir. 2000); *United States v. Oplinger*, 150 F.3d 1061, 1067 n. 5 (9th Cir. 1998). This is true even where, as here, the trial court found that the defendant should have received *Miranda* warnings when he was taken into custody. *See Combs*, 205 F.3d at 280.

■ The defendant's argument on appeal relies largely on *Doyle*, and the defendant does not argue that if *Doyle* is found to be inapplicable this court should nonetheless conclude that the State violated the defendant's due process rights under Part I, Article 15 of the New Hampshire Constitution. Because we find no compelling reason to conclude that the State Constitution provides greater protection in this area than does the Federal Constitution, we conclude that the State's comment on the defendant's post-arrest, pre-*Miranda* silence did not violate the defendant's due process rights. *Cf. Breest v. Perrin*, 125 N.H. 703, 705 (1984).

It should be noted that with respect to the Fourteenth Amendment of the United States Constitution, this court has addressed only the issue of Fourteenth Amendment due process and not the issue of any Fifth Amendment rights as incorporated by the Due Process Clause of the Fourteenth Amendement. These are distinct concepts. *See Combs v. Coyle*, 205 F.3d at 280 ("[T]he comment on [the defendant's] pre-*Miranda* silence did not violate due process. This does not, however, rule out the possibility that such comment is a violation of [the defendant's] Fifth Amendment privilege against self-incrimination.") Because the defendant did not object to any

Fifth Amendment violation at trial and did not brief the issue, that issue was not properly preserved and we deem it waived. *See State v. Monroe*, 142 N.H. 857, 873 (1998), *cert. denied*, 525 U.S. 1073 (1999).

*Affirmed.*

BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.