Hillsborough-southern judicial district
No. 2005-796

THE STATE OF NEW HAMPSHIRE

v.

SEAN BROWN

Argued: February 27, 2007
Opinion Issued: April 6, 2007

*Kelly A. Ayotte*, attorney general (*Elizabeth J. Baker*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Sean Brown, appeals his conviction for hindering apprehension under RSA 642:3, I(a) (1996), following a jury trial

in Superior Court (*Groff*, J.). He argues that the trial court improperly expanded the statutory definition of the crime when it responded to a jury question and erred in denying his motion to suppress. We affirm.

The record supports the following. On May 25, 2004, the Nashua Police Department was informed of a robbery allegedly committed by two males. One of the alleged perpetrators was described as a Hispanic male wearing a blue bandana. The two suspects left the scene together in a blue or green Volkswagen Jetta automobile. Officer William Adamson located a green Jetta parked in front of an apartment building, two blocks from the robbery. The vehicle's hood was still warm and it was registered to Mark Soto. Adamson, along with two uniformed officers, entered the apartment building to investigate and speak with residents.

While knocking on doors, Adamson heard an individual from an apartment yell through the door, "[W]hat do you want?" Adamson asked if the individual knew who owned the Jetta and whether he knew Soto. Without opening the door, the individual responded "no" to both questions. Adamson left the building and noticed inside the Jetta a blue bandana and a hat with the Puerto Rican flag on it. The three officers reentered the building and encountered the defendant exiting his apartment.

The officers confronted the defendant in the hallway. Adamson asked if he was the man to whom he had spoken earlier from behind the door. The defendant said that he was and that he did not open the door because he was "afraid of the police." Adamson explained that he was investigating a crime that had occurred in the area, requested the defendant's identification, and called for a criminal record check. Adamson then inquired if anyone else was in his apartment, if he knew anything about the Jetta, and if he knew Soto. The defendant answered "no" to all three questions.

When Adamson learned from dispatch that the defendant was known to carry firearms, he conducted a pat-down search for weapons, which revealed two sets of car keys, one of which belonged to a Jetta. Meanwhile, another officer saw a man attempting to climb out of the defendant's apartment window. The defendant continued to deny that there was anyone in his apartment and refused to allow the police to enter. Adamson told the defendant that he was not under arrest, but placed him in handcuffs as a protective measure while the other officers entered the defendant's apartment where they found Soto lying on the floor. The entire encounter in the hallway lasted approximately thirty to forty-five minutes. The defendant was charged with two alternative theory counts of being a felon in possession of a deadly weapon, RSA 159:3, I (2002), and one count of hindering apprehension, RSA 642:3, I(a).

At trial, the defendant moved to suppress evidence obtained as a result of his seizure upon the basis that the officers lacked reasonable suspicion when they first encountered him in the hallway. The trial court denied the motion, ruling that "the detention of the defendant was lawful as a valid investigatory stop and was reasonable in scope and duration."

At the close of the State's case, the trial court dismissed the felon in possession charges. During deliberations, the foreperson submitted a question to the court relating to the hindering apprehension statute, asking: "Is it reasonable to interpret . . . that 'commission of a crime' could be 'suspicion of commission of a crime?'" The court discussed the question with counsel and over the defendant's objection, responded, "Yes." The jury convicted the defendant of hindering apprehension.

On appeal, the defendant first argues that the trial court impermissibly expanded the definition of the crime of hindering apprehension by replying affirmatively to the jury's inquiry. We disagree.

The response to a jury question is left to the sound discretion of the trial court and we will uphold the response unless the court unsustainably exercised its discretion. *State v. Poole*, 150 N.H. 299, 301 (2003).

RSA 642:3, I(a) provides in pertinent part: "A person is guilty of an offense if, with a purpose to hinder, prevent or delay the discovery, apprehension, prosecution, conviction or punishment of another for the commission of a crime, he: (a) Harbors or conceals the other." In construing this statute, we draw guidance from RSA 625:3 (1996), which provides: "The rule that penal statutes are to be strictly construed does not apply to this code. All provisions of this code shall be construed according to the fair import of their terms and to promote justice." RSA 625:3; *State v. Williams*, 143 N.H. 559, 561-62 (1999).

New Hampshire's "Hindering Apprehension or Prosecution" statute is drawn from section 242.3 of the Model Penal Code (MPC). *Id.*; *State v. Maloney*, 126 N.H. 235, 237-38 (1985). Consistent with the MPC, the State must prove that the defendant's purpose was to hinder apprehension, prosecution or conviction. *State v. Kelley*, 120 N.H. 14, 17 (1980).

The offense, as defined in the MPC, "covers the common-law category of accessory after the fact but breaks decisively with the traditional concept that the accessory's liability derives from that of his principal. Thus, under the Model Code provision [242.3], one who harbors a murderer is not made a party to the original homicide but is convicted, as he should be, for an independent offense of obstruction of justice." MODEL PENAL CODE, Introductory Note for Article 242, at 199 (1980). "[This] approach dispenses with many of the common-law elements[,] [including] knowledge of the identity of the perpetrator, knowledge of the underlying felony, and . . . even the requirement that a felony actually have been committed . . . ."

*Commonwealth v. Perez*, 770 N.E.2d 428, 433 (Mass. 2002) (parentheses omitted) *citing* MODEL PENAL CODE & COMMENTARIES § 242.3, comment 3, at 229, 230. The approach "focuses instead upon whether the defendant purposely hindered law enforcement." *Perez*, 770 N.E.2d at 433.

The court instructed the jury that the State needed to prove beyond a reasonable doubt "that the defendant harbored Mark Soto in his residence while members of the Nashua Police Department were searching for Mr. Soto in connection with a robbery, [and] that the defendant acted with a purpose to hinder the apprehension of Mark Soto for commission of a crime."

██ The defendant argues that the court's response to the jury's question "reduced the State's burden of proof with regard to [the defendant's] culpable knowledge, and permitted the jury to convict him of a crime not specified by statute." We disagree. The required mental state under RSA 642:3 does not require that the defendant or anyone else know that the person he aided in fact committed a crime. Instead, the mental state required is the intent to hinder apprehension or prosecution. RSA 642:3, I. The defendant need only act with the intent to harbor or conceal a person from apprehension and discovery.

██ Here, the defendant harbored Mark Soto, an individual who police suspected in the commission of a robbery, within his apartment. Police informed the defendant that they were investigating a crime that occurred in the area and asked him whether he knew Mark Soto, whether he knew who owned the Jetta parked out front, and whether there was anyone else in his apartment. The defendant answered "no" to all three questions. This line of questioning was sufficient to alert the defendant that the police suspected Soto had committed a crime. The police found the car keys to a Jetta in the defendant's pocket. More importantly, they discovered Soto lying on the defendant's apartment floor. The court's response to the jury question was entirely accurate and appropriate given the evidence at trial.

The defendant next argues that he was subject to an unlawful seizure in violation of Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the United States Constitution when police confronted him in the hallway because they lacked reasonable suspicion of criminal activity. We disagree.

We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33. In reviewing the trial court's rulings, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Beauchesne*, 151 N.H. 803, 809 (2005). Our review of the trial court's legal conclusions, however, is *de novo*. *Id.*

■ It is well settled that "in order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion—based on specific, articulable facts taken together with rational inferences from those facts—that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *Id.* (quotations and brackets omitted). "The suspect's conduct and other specific facts must create a 'significant possibility of criminality.'" *State v. Wiggin*, 151 N.H. 305, 308 (2004) (quoting *State v. Vadnais*, 141 N.H. 68, 70 (1996)). However, a police encounter with a citizen does not always amount to a seizure of the person. *Beauchesne*, 151 N.H. at 809. A seizure does not occur simply because a police officer approaches an individual and asks a few questions, or asks to examine the individual's identification or for consent to search the individual or his belongings. *Id.* So long as a reasonable person would feel free to leave, *State v. Riley*, 126 N.H. 257, 263-64 (1985), or to terminate the encounter, *State v. McKeown*, 151 N.H. 95, 97 (2004), the citizen is not seized under Part I, Article 19 of the State Constitution. "[A seizure] occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of the person." *Beauchesne*, 151 N.H. at 810.

> Circumstances indicating a "show of authority" might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* This is an objective test where the court considers how a reasonable person in the defendant's position would have understood his situation. *Id.*

■ Looking at the totality of the circumstances, as well as the "show of authority" factors we applied in *Beauchesne*, we hold that the defendant was not seized when the three officers initially approached the defendant in his hallway. Nashua police were investigating a robbery and began questioning residents of the apartment building in an attempt to discover information regarding the suspect and the Jetta. When the three officers encountered the defendant in the hallway, Adamson initially engaged in limited conversation with him as to why he did not open his apartment door. Adamson then asked the defendant a series of questions and asked for his identification. This police contact took only a short period of time. As the trial court found, the officers' actions in the hallway did not transcend a mere request to communicate and would not have led a reasonable person to believe that he must submit to Adamson's requests; it was therefore a consensual encounter. *See id.* at 815.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Florida v. Bostick*, 501 U.S. 429, 436 (1991); *Terry*, 392 U.S. at 29-31; *McKeown*, 151 N.H. at 97. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.