2009 WY 1

**Joseph WILSON, Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. S–08–0020.

Supreme Court of Wyoming.

Jan. 13, 2009.

Representing Appellant: Tina N. Kerin, Appellate Counsel, Wyoming Public Defender; John D. King, Acting Faculty Director, Diane E. Courselle, Faculty Director, and Andy F. Sears, Student Intern, University of Wyoming Defender Aid Program. Argument by Mr. Sears.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Appellant, Joseph Wilson, contends that the district court erred when it found that a police officer's use of a patrol car computer to search for outstanding warrants did not constitute a search and/or seizure. Appellant also argues that the district court erred when it declined to find a search of Appellant's person unconstitutional because the evidence did not support a finding that police used excessive force during the encounter.

## ISSUES

[¶ 2]  1.  Did the district court err when it determined that a warrant check is not a search or a seizure and therefore does not trigger the protection of the Fourth Amendment of the United States Constitution or of Article I, Section 4 of the Wyoming Constitution?

2.  Did the district court err when it declined to find the search of Appellant's person unconstitutional because the evidence presented did not support a determination that officers used excessive force during the encounter?

## FACTS

[¶ 3]  Appellant was walking down the street when Officer Ben Baedke of the Casper Police Department stopped him and initiated a conversation.  Officer Baedke, who remained seated in his patrol car, asked for Appellant's name.  Appellant gave his first name, but the officer looked at him "expecting a little bit more—something a little bit more specific," and Appellant provided his full name.  Officer Baedke used the computer in his car to run a warrant check on Appellant while they talked.  The computer search returned an outstanding warrant in Appellant's name and Officer Baedke confirmed that the picture attached to the warrant was of Appellant.

[¶ 4]  Officer Baedke radioed for backup and for confirmation of the warrant.  He got out of his car, approached Appellant, and informed him that there was a warrant for

his arrest. After dispatch confirmed the warrant, Officer Baedke and Officer Walters, who had responded as backup, placed Appellant under arrest. Officer Baedke handcuffed Appellant and performed a search of Appellant's person incident to arrest, finding a counterbalance weight[1] in Appellant's pants pocket. Officer Baedke then requested that Appellant open his hand, which was clenched. Appellant responded that he did not understand why he had to open his hand, at which point Officer Walters unholstered his TASER, removed the cartridge, and held the TASER to Appellant's neck. Officer Baedke ordered Appellant to open his hand and informed him that the officers would deploy the TASER if he did not comply. Approximately three seconds later, Officer Walters deployed the TASER and Appellant fell to the ground, injuring his head by striking it on the pavement. When ordered by the officers again to open his hand, Appellant said "I dropped it!" The officers helped Appellant up and found three baggies of a crystalline substance, later confirmed to be methamphetamine, on the ground where Appellant had fallen. The officers transported Appellant to the hospital where he was checked for serious injury, treated, and released.

## STANDARD OF REVIEW

[¶ 5] Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo.

*Holman v. State*, 2008 WY 54, ¶ 8, 183 P.3d 368, 371 (Wyo.2008) (quoting *Grant v. State*, 2004 WY 45, ¶ 10, 88 P.3d 1016, 1018 (Wyo. 2004)) (citations omitted).

1. Officer Baedke testified that the presence of

## DISCUSSION

[¶ 6] Appellant contends that officers violated his constitutional right to be free from unreasonable search and/or seizure during the encounter that led to his arrest. He first attacks Officer Baedke's warrant check by contending that his initial contact with Officer Baedke was a seizure and that reasonable suspicion of criminal activity was required to support Officer Baedke's actions. Appellant then argues that the warrant check itself was a search and that Officer Baedke had to have reasonable suspicion of criminal activity or Appellant's consent to run the warrant check. Finally, Appellant asserts that the search of his person was rendered unreasonable when officers used excessive force by deploying a TASER to get him to open his closed hand during the arrest, and that the district court should have suppressed evidence collected as a result of that excessive use of force.

### *Seizure: Initial Contact*

[¶ 7] Appellant claims that he was seized for the purposes of the Fourth Amendment of the United States Constitution or of Article I, Section 4 of the Wyoming Constitution when Officer Baedke stopped him on the street and asked for his name. We have described the three levels of contact between police and citizens as follows:

> The most intrusive encounter, an arrest, requires justification by probable cause to believe that a person has committed or is committing a crime. The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime. The least intrusive police-citizen contact, a consensual encounter, involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning.

*Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994) (citations omitted). Under both the federal

such a weight could be related to drug use.

and the Wyoming state constitutions, a person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). We have already determined that "[a] request for identification is not, by itself, a seizure." *Id.* at 222. In *Wilson*, we found that a consensual encounter with police remained consensual when a police officer requested identification and ran a computerized warrant check using that information. *Id.* We found that a seizure occurred in that case only after the citizen complied with the officer's order not to leave while the check was being completed. *Id.* at 223.

■ [¶ 8] Unlike in *Wilson*, Appellant in this case was never instructed not to leave. Officer Baedke ran the warrant check while engaged in casual conversation with Appellant, and the patrol car's computer returned the results in three to five seconds. Officer Baedke made no show of authority that would have caused a reasonable person to believe he could not leave the scene. Appellant claims that the fact that Officer Baedke hesitated and looked at Appellant expectantly when Appellant only provided his first name was sufficient to convert the encounter from a consensual interaction to a stop requiring reasonable suspicion of criminal activity. We are not prepared to find, in the absence of any other aggravating factor, that a mere expectant look can constitute detention for the purposes of the Fourth Amendment of the United States Constitution or Article I, Section 4 of the Wyoming Constitution.

### Search: Warrant Check

■ [¶ 9] Appellant next argues that the warrant check itself constituted a seizure and that Officer Baedke was required to have either reasonable suspicion of criminal activity or Appellant's consent in order to carry out such a check. In *Meek v. State*, 2002 WY 1, ¶ 11, 37 P.3d 1279, 1283 (Wyo.2002), however, we stated, "we fail to see how requesting an NCIC check alone could implicate Mr. Meek's constitutional rights." The officer in *Meek* ran an NCIC check on a car Mr. Meek was driving and stopped Mr. Meek based on the result of that search. *Id.* at ¶ 3, 37 P.3d at 1281. In that case, we emphasized that "the officer in the instant case did not conduct a limited seizure or impose any restriction on Mr. Meek's freedom to leave while waiting for the NCIC check to be completed." *Id.* at ¶ 10, 37 P.3d at 1283. The situation is the same here. As we found above, Appellant was engaged in a consensual conversation with the officer when the warrant check was conducted. The search was complete within seconds and Appellant was in no way detained or restricted while the officer checked police department records to determine whether Appellant had any outstanding warrants.[2]

### Suppression: Excessive Use of Force

■ [¶ 10] Appellant also asks this Court to find that the district court should have granted his motion to suppress evidence because the officers used excessive force in obtaining that evidence. In *Roose v. State*, 759 P.2d 478 (Wyo.1988), we discussed the application of the exclusionary rule[3] in the context of excessive use of force. In *Roose*, based on the totality of the circumstances surrounding the arrest, we found that officers did not use excessive force when they shot a suspect who was not complying with police orders and whose actions would have caused a reasonable police officer to believe he might be reaching for a weapon. *Id.* at 484. In the present case, we find that the district court acted appropriately because the

---

**2.** An NCIC check involves the use of the National Criminal Information Center database. Officer Baedke testified that the warrant check in this case involved only the local database. However, that distinction does not change the result of the analysis.

**3.** We discussed excessive use of force as a due process violation in accordance with U.S. Supreme Court precedent at the time *Roose* was written. *Roose*, 759 P.2d at 484. However, the Court has since determined that the Fourth Amendment is the proper framework for resolution of claims of excessive use of force during a search or seizure. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

evidence presented would not have allowed the court to reach the conclusion that officers used excessive force under the circumstances.

[¶ 11] A review of the record indicates that the district court had almost no evidence before it that would have allowed it to conclude that the force used by officers in this case was excessive under the circumstances. The suppression hearing transcript shows that Officer Baedke was the only witness. Officer Baedke testified that he was trained in the use of the TASER and that he had been trained to aim for "central body mass" when deploying the weapon. However, there was no testimony about the reason for such a rule, or whether using a TASER on Appellant's neck increased the risk of harm to Appellant. Officer Baedke was also unable to give competent testimony with respect to the use of force continuum. Defense counsel attempted to elicit testimony from Officer Baedke about the possible danger of deploying a TASER in the neck area, but Officer Baedke did not have the personal knowledge or expertise to answer such complex medical questions. There was no medical testimony. Officer Baedke testified that he did not attempt to pry Appellant's fingers open because he did not know what was in Appellant's hand and because there was potential for injury either to the officers or to Appellant from such an attempt. There was no testimony by any expert on law enforcement procedures. There was no testimony from any expert on risks associated with TASER deployment. There was no testimony that the use of the TASER was not appropriate in these circumstances, or that such use would have unacceptably increased the risk to someone in this situation. There was no competent evidence that would have allowed the district court to find that the use of the TASER to open Appellant's hand in this situation, constituted excessive use of force.

## CONCLUSION

[¶ 12] The district court did not err when it determined that Appellant's initial contact with police was consensual and that running Appellant's name through a warrant check computer did not constitute a search for con-stitutional purposes. The district court did not err in declining to find a search unconstitutional where the evidence presented did not support a conclusion that officers used excessive force in the conduct of that search. Therefore, we affirm.