Hillsborough-northern judicial district
No. 2008-206

THE STATE OF NEW HAMPSHIRE

v.

MOHAMED DAOUD

Argued: March 12, 2009
Opinion Issued: June 3, 2009

*Kelly A. Ayotte*, attorney general (*Diana E. Fenton*, assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief, and *Stephanie C. Hausman*, assistant appellate defender, of Concord, orally, for the defendant.

BRODERICK, C.J. The defendant, Mohamed Daoud, appeals an order of the Superior Court (*Abramson*, J.) denying his motion to suppress. We affirm.

The following facts are not in dispute or are supported by the record. The defendant was charged by complaint in Manchester District Court with one misdemeanor count of unlawful possession of marijuana, a controlled drug. *See* RSA 318-B:2, I (2004). He was also charged by indictment in superior court with one felony count of driving a motor vehicle while certified as a habitual offender. *See* RSA 262:23 (2004). Both charges arise out of events that occurred on the morning of October 7, 2006.

At approximately 7:30 a.m. on that date, Manchester Police Officer Jacob Tyler was on patrol at the Manchester Inn on Queen City Avenue. He observed a white car enter the driveway to the Inn, headed toward the parking lot. The car stopped just before turning into the parking lot, and both the driver and his male passenger looked at the officer. After making brief eye contact with the officer, they looked away. The defendant then turned the car away from the lot and drove toward the exit. Thinking this conduct suspicious, the officer followed the car toward the exit to Queen City Avenue. The defendant's car turned on to Queen City Avenue and then

promptly turned into the Inn's other entrance, again heading toward the parking lot. The officer then saw the two men walking toward the Inn's front entrance. He parked his cruiser and followed on foot. When the officer arrived at the Inn's entrance, the door was locked, so he knocked. He could see the defendant and the passenger in the lobby near the front desk. In response to his knock, they turned around and then looked away. The officer continued knocking and may have buzzed for the attendant. He did not recall whether he said anything, but acknowledged he may have said, "[O]pen the door."

Within a brief time, the defendant opened the door. Officer Tyler asked the two men "what they were up to" and where they were from, noting that he did not often see people entering the Inn at such an early hour. The defendant replied that he lived in Manchester, and that he was there to "hook up with a girl." The officer asked to see his identification. The defendant appeared reluctant to comply and initially turned as if to leave, but he then gave Officer Tyler a non-driver identification. Officer Tyler testified that because he had observed the defendant driving, he passed the defendant's name through to dispatch and learned that he was a certified habitual offender. He arrested the defendant, and had him transported to the station. During the booking process, Officer Tyler seized a key to a vehicle and a small baggie of marijuana from the defendant's pocket.

The defendant moved to suppress all evidence obtained on the day of his arrest. He argued that Officer Tyler had violated his rights under Part I, Articles 15 and 19 of the New Hampshire Constitution and the Fourth and Fifth Amendments to the United States Constitution by unlawfully seizing him in the front lobby of the Inn. Following a hearing, the superior court denied the motion.

The State contends that the defendant's appeal is not properly preserved on the basis of collateral estoppel, waiver and failure to file a timely notice of appeal. For the purposes of this appeal, we will assume, without deciding, that the defendant's claim of error is properly before us.

The sole issue on appeal is whether Officer Tyler's encounter with the defendant was an unconstitutional seizure. The defendant concedes that when he produced his non-driver identification, Officer Tyler had reasonable suspicion sufficient to detain him. However, he argues that he was seized at an earlier point in time, when he opened the locked lobby door of the Inn at the officer's request. He contends that this seizure was unsupported by reasonable suspicion and violated his constitutional right to be free from unreasonable seizures under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution.

The trial court found that there was "no evidence that the officer commanded the defendant particularly to open the door, or used some other show of authority to compel the defendant to respond." It also found that there was "no evidence that the defendant felt bound to open the door, simply because it was a police officer knocking." Once in the lobby, Officer Tyler's initial questions, according to the trial court, "were not far more intrusive than those normally permitted in this type of situation." (Quotation omitted.) The trial court also found that Officer Tyler's tone toward the defendant was neither "harsh [n]or intimidating." As the trial court observed, "the simple act of asking for identification . . . does not, in itself, constitute a seizure." The trial court concluded that "[c]onsidering the totality of the circumstances, . . . the Court finds that Officer Tyler did not seize the defendant until the time of his arrest."

We first address the defendant's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983). In reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo*. *State v. Sullivan*, 157 N.H. 124, 129 (2008).

■ ■ "We begin our review here with the baseline rule that the New Hampshire Constitution provides protection against unreasonable seizures. An inquiry into the reasonableness of a seizure is only necessary, of course, when an individual has actually been seized." *Id.* at 130 (citations omitted). "An investigatory stop is a very limited seizure." *State v. Beauchesne*, 151 N.H. 803, 809 (2005). However, not all personal interactions between police and citizens involve "seizures" of persons. *Sullivan*, 157 N.H. at 130. Indeed, "[a] seizure does not occur simply because a police officer approaches an individual and asks a few questions, or asks to examine the individual's identification." *State v. Brown*, 155 N.H. 164, 168 (2007). "An interaction becomes a seizure, however, when a reasonable person would no longer believe he or she is free to leave. This occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of the person." *Sullivan*, 157 N.H. at 130 (quotation and citations omitted).

> Circumstances indicating a show of authority might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. While mere requests to communicate generally do not amount to an official show of authority, the police may not convey a message that compliance

with their requests is required. Our analysis of this issue is an objective one, requiring a determination of whether the defendant's freedom of movement was sufficiently curtailed by considering how a reasonable person in the defendant's position would have understood his situation. Further, we conduct an inquiry into an alleged seizure while mindful of all of the circumstances surrounding the incident.

*Id.* (citations, quotations and brackets omitted).

■ The defendant claims he was seized when he opened the secured lobby door. Nothing in the record, however, suggests that the officer's request to open the door conveyed that the defendant's compliance was required. To the contrary, the trial court expressly found that there was "no evidence that the defendant felt bound to open the door." The record is devoid of any evidence that once the defendant opened the door, Officer Tyler touched him or used authoritative language or tone. The officer's verbal exchange with the defendant while standing in the lobby conveyed the casual nature of the encounter. A reasonable person would not have taken the officer's question, "what they were up to," as a show of authority. Nor did the officer's request to see the defendant's identification constitute a seizure. *See Brown,* 155 N.H. at 168. Considering the totality of the circumstances, we hold that a reasonable person in the defendant's situation would have understood that the officer was not restraining his liberty by means of physical force or show of authority. The trial court's factual conclusions are supported by the record, and we agree with its legal conclusion that the defendant was not seized until after the officer reviewed his non-driver identification.

In concluding that the defendant was not seized before the officer reviewed his non-driver identification, our holding is consistent with decisions in other state and federal jurisdictions under similar circumstances. *See, e.g., United States v. Holloway,* 499 F.3d 114, 115-17 (1st Cir. 2007) (finding no seizure upon police entering through locked exterior door to defendant's apartment building, asking him questions in the common area and requesting to see his identification); *United States v. Tarantola,* 332 F.3d 498, 499-500 (8th Cir.) (finding no seizure where police knocked on locked glass door of closed business to get defendant's attention and defendant let police inside), *cert. denied,* 540 U.S. 1066 (2003); *Manigault v. State,* 881 N.E.2d 679, 685 (Ind. Ct. App. 2008) (finding no seizure where officer approached defendant, a hotel guest, in the lobby, asked him questions and requested identification).

The defendant concedes that the officer had reasonable suspicion to detain him upon reviewing his non-driver identification. Because we hold

that the defendant was not seized until then, we need not decide whether the officer had reasonable suspicion before that time. *See Sullivan*, 157 N.H. at 131-32.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Brown*, 155 N.H. at 169; *see Florida v. Bostick*, 501 U.S. 429, 434-36 *(1991). Accordingly*, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

DUGGAN and HICKS, JJ., concurred.