NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Strafford
No. 2015-0480

THE STATE OF NEW HAMPSHIRE

v.

SEAN McINNIS

Argued: October 6, 2016
Opinion Issued: January 13, 2017

Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. Following a bench trial based upon stipulated facts, the defendant, Sean McInnis, was convicted of two counts of possession of a controlled drug. See RSA 318-B:2, I (2011). On appeal, he challenges his convictions, arguing that the Superior Court (Tucker, J.) erroneously denied his motion to suppress. We affirm.

The following facts are drawn from the trial court's order, or are otherwise found in the record. In November 2009, the defendant pleaded guilty to one count of willful concealment/shoplifting (shoplifting) and was sentenced

to pay $744 in fines.  See RSA 644:17 (2007) (current version at RSA 637:3-a (2016)).  The defendant did not pay the fines and a default was entered against him.

On February 6, 2012, the 10th Circuit Court-Portsmouth District Division, in Rockingham County, held a hearing on the default, and issued an order stating: "The defendant owes $770 in fines.  The default is vacated.  Defendant agrees to pay the fine within 120 days of release from his substance abuse program."  On the same day, in the same court, the defendant pleaded guilty to one count of theft by unauthorized taking (theft).  See RSA 637:3 (2016).  The circuit court sentenced him to 12 months of incarceration, with all but three months suspended.  The circuit court ordered that the sentence was "to run concurrently with [another] case currently pending in" Carroll County.  The defendant served his term of incarceration in the Carroll County House of Corrections.

Several days later, on or about February 10, the circuit court scheduled a payment hearing for April 12 regarding the defendant's outstanding fines of $770 for his shoplifting conviction.  On April 2, the defendant filed a motion requesting permission to pay his fines through time in jail.  A hearing upon the motion was scheduled for April 12.

The defendant did not appear in court on April 12 because he was still incarcerated.  The circuit court issued a bench warrant for his arrest based upon his failure to appear.  On or about May 24, the defendant was released from the Carroll County House of Corrections.

On August 12, around midnight, an officer of the Rochester Police Department received a report about an assault at the Old Oak Tavern on North Main Street.  When the officer arrived, there were other officers already at the scene, so he began to patrol the area to locate witnesses and people potentially involved in the assault.  As he drove away from the scene, he observed the defendant walking toward the tavern.

The officer parked his police cruiser on the side of the road and got out of the vehicle.  The officer and the defendant approached each other.  The officer, who was in uniform, informed the defendant that he was investigating a crime and asked the defendant whether he was involved in the assault at the tavern.  The defendant denied involvement.  The officer then asked the defendant for identification.  The defendant provided the officer with his name and date of birth, but did not offer any documentary evidence of his identity.  In the presence of the defendant, the officer radioed police dispatch and requested a check for outstanding warrants.  Dispatch advised that there was an outstanding bench warrant for the defendant's arrest.

The officer arrested the defendant based upon the bench warrant. The defendant stated that he had drugs on his person and the officer seized them. The officer then transported the defendant to the Rochester Police Department, where the defendant made additional incriminating statements.

The defendant was charged with two counts of possession of a controlled drug. See RSA 318-B:2, I. He moved to suppress all evidence obtained as a result of his arrest, arguing that the officer had seized him, prior to arrest, without reasonable suspicion, violating his rights under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution. He also argued that the evidence must be suppressed because the bench warrant underlying his arrest was invalid. The State objected. Following a hearing, the superior court denied the motion, ruling that the defendant was not seized until the officer arrested him, and that the bench warrant underlying the arrest was valid. Subsequently, the trial court held a bench trial based upon stipulated facts, after which it found the defendant guilty of the two counts of possession of a controlled drug. This appeal followed.

On appeal, the defendant argues that the trial court erred in denying his motion to suppress because: (1) he was seized without reasonable suspicion when the officer requested the warrant check; and (2) the bench warrant upon which he was arrested was improperly issued. We address each argument in turn.

"In reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous." State v. Daoud, 158 N.H. 779, 782 (2009). "Our review of the trial court's legal conclusions, however, is de novo." Id.

The defendant argues that he was seized without reasonable suspicion "when the officer called for a warrant check while standing next to him." He contends that "a reasonable person, hearing the officer call in a check for warrants, would not feel free to leave until the check was completed," especially where, as here, "the officer did not say that [the defendant] was free to leave." He asserts that a reasonable person would conclude "that the officer intends for the person to remain in his [or her] presence so as to effectuate an arrest if a warrant is revealed." In response, the State argues that the defendant was not seized until the officer arrested him based upon the bench warrant.

We first address the defendant's claim under the State Constitution, and cite federal opinions for guidance only. State v. Ball, 124 N.H. 226, 231-33 (1983). "[T]he New Hampshire Constitution provides protection against unreasonable seizures." Daoud, 158 N.H. at 782 (quotation omitted). "A warrantless seizure is per se unreasonable unless it falls within a recognized exception to the warrant requirement." State v. Licks, 154 N.H. 491, 492-93

3

(2006). An investigatory stop based upon reasonable suspicion is such an exception. See State v. Brodeur, 126 N.H. 411, 415 (1985).

To determine whether an officer made a lawful investigatory stop, "we conduct a two-step inquiry: first, we determine when the defendant was seized; second, we determine whether, at that time, the [officer] possessed a reasonable suspicion that the defendant was, had been or was about to be engaged in criminal activity." State v. Joyce, 159 N.H. 440, 444 (2009) (quotation omitted).

"[N]ot all personal interactions between police and citizens involve seizures of persons." Daoud, 158 N.H. at 782 (quotation omitted). "Indeed, a seizure does not occur simply because a police officer approaches an individual and asks a few questions, or asks to examine the individual's identification." Id. (quotation and brackets omitted). "An interaction becomes a seizure, however, when a reasonable person would no longer believe he or she is free to leave. This occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of the person." Id. (quotation omitted).

> Circumstances indicating a show of authority might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. While mere requests to communicate generally do not amount to an official show of authority, the police may not convey a message that compliance with their requests is required. Our analysis of this issue is an objective one, requiring a determination of whether the defendant's freedom of movement was sufficiently curtailed by considering how a reasonable person in the defendant's position would have understood his situation. Further, we conduct an inquiry into an alleged seizure while mindful of all of the circumstances surrounding the incident.

Id. at 782-83 (quotation omitted).

Here, only one officer was involved in the encounter with the defendant. The officer approached the defendant, explained that he was investigating a crime, and asked whether the defendant was involved. There is no evidence that the officer approached the defendant in a threatening or hostile manner. Although the officer drove a police cruiser and was in uniform, the trial court found that "[t]here was no evidence that [the officer] directed [the defendant] to stop and speak with him or utilized any show of authority, such as drawing his weapon, which would have compelled [the defendant] to halt." The officer asked the defendant for identification; however, nothing in the record suggests

4

that the officer's request conveyed that the defendant's compliance was required.  Moreover, while the officer remained in the defendant's presence during the warrant check, the record is devoid of any evidence that the defendant was detained or restricted in any manner.  Nor is there any evidence that the officer ever instructed the defendant not to leave or used authoritative language or tone.  Furthermore, at no point during the encounter did the officer obtain any identification documents belonging to the defendant.  Finally, the record indicates that the length of the encounter between the officer and the defendant, prior to when the officer received the information regarding the bench warrant, was only "[a] couple minutes."  Considering the totality of the circumstances, we conclude that a reasonable person in the defendant's position would have believed that he or she was free to leave when the officer requested the warrant check and, therefore, the defendant was not seized when the officer did so.

In concluding that the defendant was not seized when the officer requested the warrant check, our holding is consistent with decisions in other jurisdictions arising out of similar circumstances.  See, e.g., State v. Page, 73 So. 3d 351, 353 (Fla. Dist. Ct. App. 2011) (ruling that warrant check does not per se transform encounter into a seizure); State v. Johnson, 517 N.E.2d 262, 264 (Ohio Ct. App. 1986) (finding no seizure where two uniformed officers approached defendant, asked him his name, and ran warrant check while defendant waited); State v. Adams, 158 P.3d 1134, 1137-38 (Utah Ct. App. 2007) (finding no seizure where officer held defendant's identification and stood near defendant during warrant check, which took only 30 to 60 seconds, returned defendant's identification before continuing questioning, and used no show of force, commanding tone, or authoritative language); Wilson v. State, 199 P.3d 517, 520 (Wyo. 2009) (finding no seizure where officer ran warrant check while engaged in casual conversation with defendant, warrant results were returned in three to five seconds, defendant was never instructed not to leave, and officer made no show of authority that would have caused a reasonable person to believe he could not leave scene).

Because we hold that the defendant was not seized when the officer requested the warrant check, we need not decide whether the officer had the requisite reasonable suspicion at that time.  See Daoud, 158 N.H. at 782 ("An inquiry into the reasonableness of a seizure is only necessary, of course, when an individual has actually been seized." (quotation omitted)).  The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances.  Id. at 784; see Florida v. Bostick, 501 U.S. 429, 434-35 (1991).  Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that the trial court erred in denying his motion to suppress because the bench warrant upon which he was arrested was "improperly issued."  Relying upon Part I, Article 19 of the State

5

Constitution, he contends that "[w]here the court knows that the defendant's absence is caused by his incarceration, there is no probable cause to issue a bench warrant." He argues that his "known incarceration constitutes a 'reasonable excuse' for his absence and thus the failure to appear is not contempt of court." In response, the State maintains that "[t]here is no requirement that probable cause take into account 'imputed' information that is not actually known by the magistrate issuing the warrant" and that although the defendant may have had a reasonable excuse for not attending the April 12, 2012 hearing, "that was an issue to be litigated at a further hearing; it would not defeat the probable cause underlying the bench warrant."

Because the parties do not appear to dispute that probable cause was required for the circuit court to issue the bench warrant, we assume, without deciding, that such is the case. Probable cause to arrest exists when there is "knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense." State v. Ducharme, 167 N.H. 606, 611 (2015) (quotation omitted). In determining whether probable cause existed, "we review reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a prima facie case." Id. (quotation omitted).

Here, the trial court found that the circuit court issued the bench warrant upon the basis of contempt for the defendant's failure to appear at the April 12 hearing. Pursuant to the scheduling notice, the defendant was ordered to appear in court on April 12. The notice states that:

> If you are unable to appear at this scheduled hearing, you must request a continuance from the Court in writing at least 10 days in advance of the hearing date. You must also send a copy of the request to the opposing party, unless restricted from doing so. Motions to continue filed fewer than 10 days in advance of hearing will only be granted if the Court finds that an emergency or exceptional circumstance exists. You must appear on the scheduled date unless you receive notification from the Court that a request to continue the hearing has been granted. **FAILURE TO APPEAR OR PROPERLY OBTAIN A CONTINUANCE FROM THE COURT MAY RESULT IN AN ORDER FOR YOUR ARREST**.

The notice denotes that a copy was sent to the defendant. The defendant did not appear; nor does the record indicate that he sought or obtained a continuance. Thus, there was probable cause for the circuit court to issue the bench warrant upon the basis of contempt for the defendant's failure to appear at the April 12 hearing.

The defendant argues that the circuit court knew that he was incarcerated because "on the day of the [April 12] hearing, the court noted on

6

the scheduling notice that one of its personnel had located [him] at the Carroll County House of Corrections." We need not decide whether the circuit court's knowledge of the defendant's incarceration would negate probable cause, or whether such knowledge would require suppression of the subject evidence, because the evidence before the trial court was insufficient to establish that the circuit court, in fact, knew that he was incarcerated when it issued the bench warrant.

The record shows that on the scheduling notice is a handwritten notation, dated April 12, indicating that the defendant was in the Carroll County House of Corrections. Nothing in the record, however, establishes when, on April 12, the notation was made. Under these circumstances, we cannot conclude that the notation, standing alone, demonstrates that the circuit court knew that the defendant was incarcerated at the time it issued the bench warrant.

The defendant also asserts that the circuit court knew that he was incarcerated because "it issued the scheduling notice [for the April 12 hearing] just days after it sentenced him to jail for three months" in the theft case. Thus, he contends that "unless he obtained early release through good time, [he] would still be incarcerated on the court's sentence at the time of the scheduled hearing." As the defendant acknowledges, through good time, he could have been released from incarceration for his theft conviction prior to the April 12 hearing. Thus, we cannot conclude that the circuit court's knowledge of the sentence it imposed in the theft case in February shows that the circuit court knew that the defendant was incarcerated on April 12.

Finally, the defendant suggests that the circuit court knew that he was incarcerated because it was "aware that [he] was serving another court's sentence." He points out that "the court's file in [the shoplifting case] indicated that [he] would be attending . . . substance abuse treatment for an undetermined amount of time." In the absence of additional evidence, however, we cannot conclude that the mere reference to a substance abuse program in the circuit court's file establishes that the circuit court knew that the defendant was incarcerated on April 12.

The defendant also suggests that the trial court erred in ruling that the bench warrant was valid because: (1) the circuit court does not have the authority to issue a bench warrant for failure to appear for a fine payment hearing upon the basis of contempt; and (2) even if such authority exists, a person is entitled to certain due process rights before it is exercised. To the extent that the defendant makes these arguments, they are not preserved for appeal.

The defendant, as the appealing party, bears the burden of demonstrating that he "specifically raised the arguments articulated in [his

7

appellate] brief before the trial court." State v. Exxon Mobil Corp., 168 N.H. 211, 221 (2015) (quotation omitted). "Generally, the failure to do so bars a party from raising such claims on appeal." Id. "[T]he purpose underlying our preservation rule is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review." State v. Mouser, 168 N.H. 19, 26 (2015) (quotation omitted).

Here, the defendant advanced two arguments in the trial court in support of his contention that the bench warrant was invalid: (1) the issuance of the bench warrant was a "clerical error" because, pursuant to the circuit court's February 6, 2012 order, the defendant had 120 days from his release from a substance abuse program "to pay his fines, and that time had not yet elapsed"; and (2) the issuance of the bench warrant for failure to appear when the circuit court knew he was incarcerated and failed to issue a transport order violates the "prohibition against unreasonable seizures." The defendant never argued, as he appears to argue on appeal, that the bench warrant was invalid because the circuit court does not have the authority to issue a bench warrant for failure to appear for a fine payment hearing upon the basis of contempt. Nor did he raise a due process argument. Thus, the trial court never had an opportunity to consider these issues. Even if we assume that the defendant could not have raised these arguments prior to the issuance of the trial court's order, it would have then been incumbent upon him to move for reconsideration. See id. at 27; see also N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). The record on appeal does not demonstrate that he sought reconsideration of the trial court's ruling. Thus, we conclude that the defendant has failed to preserve these arguments for our review. We, therefore, decline to consider them.

For the foregoing reasons, we cannot conclude that the trial court erred in ruling that the bench warrant upon which the defendant was arrested was valid.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

8