NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2019-0057

THE STATE OF NEW HAMPSHIRE

v.

ERNEST JONES

Argued:  November 20, 2019
Opinion Issued:  January 10, 2020

Gordon J. MacDonald, attorney general (Samuel R.V. Garland, attorney, on the brief and orally), for the State.


Wadleigh, Starr & Peters P.L.L.C., of Manchester (Donna J. Brown on the brief and orally), for the defendant.


Gilles R. Bissonnette, Henry R. Klementowicz, Michael Eaton, and Albert E. Scherr, of Concord, on the brief, for the American Civil Liberties Union of New Hampshire, as amicus curiae.


DONOVAN, J.  The defendant, Ernest Jones, appeals an order of the Superior Court (McNamara, J.) denying his motion to suppress evidence that led to his conviction on one count of possession of a controlled drug.  See RSA 318-B:2, I (2017).  He appeals, arguing that the trial court erred by: (1) concluding that he was not seized during his encounter with two Concord

police officers; and (2) refusing to consider his race in its seizure analysis. We reverse and remand because the State failed to meet its burden of showing that the defendant was not seized. We also conclude that race is one circumstance that courts may consider in conducting the totality of the circumstances seizure analysis.

I. Facts

The following facts are supported by the record. At approximately 8:00 p.m. on April 28, 2017, Concord Police Officers Mitchell and Begin were dispatched to 22 Allison Street to investigate a suspicious vehicle report. Upon arriving at the residence, the officers observed a pickup truck parked behind the building in "a shared driveway area." The officers, both of whom were wearing uniforms, parked on the street and did not activate their blue emergency lights. Begin approached the driver's side of the truck, while Mitchell approached the passenger's side. The defendant, whom Mitchell perceived to be African-American, was sitting in the driver's seat and a female was sitting in the passenger's seat.

Mitchell approached the vehicle "to investigate and find out what [the occupants'] business was or what the reason was for why the vehicle was there."[1] Accordingly, he asked the passenger what she was doing there, and she explained that she lived at the residence and the defendant was visiting her. Mitchell informed the passenger that he was investigating a report of a suspicious vehicle. He obtained the passenger's identification, called her name into dispatch, and was advised that there were no warrants for her arrest.

Mitchell "couldn't overhear" Begin's conversation with the defendant, but perceived it to be "very laid[-]back" and noted that there was "no yelling." Less than 20 minutes after the officers arrived at the address, Mitchell heard over the radio that a bench warrant had been issued for the defendant and the officers arrested him. A search of the defendant incident to his arrest revealed a "tub" of white powder, later identified as fentanyl.

After being indicted for possession of a controlled drug, the defendant moved to suppress the evidence discovered as a result of his encounter with the officers. He argued that the officers unlawfully seized him without reasonable suspicion in violation of Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution when they approached the truck and asked him and the passenger for their identification. The defendant also argued that the trial court should consider his race in conducting its analysis. The State contended that the defendant was not seized when the officers asked for his identification. Begin, the officer who interacted with the defendant, did not testify at the

---

[1] Mitchell had been informed that the landlord did not know to whom the vehicle belonged. .

2

suppression hearing; Mitchell was the State's sole witness. The trial court denied the defendant's motion, concluding that no seizure occurred because: (1) the officers made no show of authority; (2) they did not curtail the defendant's freedom of movement; (3) they parked their cruiser "out of sight"; and (4) the defendant did not feel uncomfortable or threatened and was cooperative throughout the interaction. It also concluded that it would be error to consider the defendant's race as part of its analysis.

The defendant was subsequently convicted by a jury. This appeal followed.

## II. Analysis

The defendant argues that the State failed to meet its burden of showing that he was not seized during his encounter with the officers. We agree.

When reviewing a trial court's determination of whether a seizure occurred, we accept its factual findings unless they are unsupported by the record or clearly erroneous. See State v. McInnis, 169 N.H. 565, 569 (2017). We review its legal conclusion regarding whether a seizure occurred de novo. See id. We first consider the defendant's claim under the State Constitution, and turn to federal opinions for guidance only. Id. Both parties agree that the burden at the suppression hearing rested upon the State. See State v. Ball, 124 N.H. 226, 234 (1983).

Part I, Article 19 of the New Hampshire Constitution incorporates a "strong right of privacy" and protects individuals from unreasonable seizures. State v. Beauchesne, 151 N.H. 803, 812 (2005); see State v. Daoud, 158 N.H. 779, 782 (2009). This protection, however, is only triggered when a person is seized. See Daoud, 158 N.H. at 782. A seizure occurs during an encounter with the police when, in view of all the circumstances surrounding the encounter, a reasonable person in the defendant's position would believe that he or she is not free to leave or could not terminate the encounter. State v. Joyce, 159 N.H. 440, 444 (2009).

We recognize that, "as a practical matter, citizens almost never feel free to end an encounter initiated by the police." State v. Rodriguez, 796 A.2d 857, 863 (N.J. 2002); see United States v. Tanguay, 918 F.3d 1, 5-6 (1st Cir. 2019) (noting that "few people . . . would ever feel free to walk away from any police questioning" (quotation and brackets omitted)); United States v. Thompson, 546 F.3d 1223, 1226 n.1 (10th Cir. 2008) (describing the notion that a reasonable person would feel free to disregard the police as potentially "unrealistic"). This practical observation, however, does not transform all police encounters into seizures. See McInnis, 169 N.H. at 569; see also United States v. Fields, 823 F.3d 20, 25 (1st Cir. 2016). The analysis thus focuses on whether an officer objectively communicates by means of physical force or a

3

show of authority that he or she is restraining the person's liberty.  See McInnis, 169 N.H. at 570; see also Fields, 823 F.3d at 25.

When assessing whether a seizure occurred, courts must consider all of the circumstances surrounding the encounter, Joyce, 159 N.H. at 444, and no single factor is dispositive, United States v. Smith, 423 F.3d 25, 29 (1st Cir. 2005).  Here, the evidence presented by the State was insufficient to allow the trial court to weigh all of the circumstances surrounding the encounter and determine whether the defendant was seized.  Specifically, the trial court did not have sufficient evidence before it to properly assess whether Begin objectively communicated a show of authority or the manner in which the officers identified the defendant and learned about his bench warrant.  Instead, the trial court made factual findings and considered circumstances that are unsupported by the record.

First, the trial court had insufficient evidence to determine whether Begin explicitly communicated that he was restraining the defendant's freedom through a show of authority, because Begin did not testify.  The words exchanged between a police officer and an individual are critical to determining whether the officer made an objective show of authority rising to the level of a seizure.  See Beauchesne, 151 N.H. at 814 (noting the importance we have placed upon whether the officer "used language indicating that compliance was not optional" in conducting a seizure analysis (quotation omitted)).  However, the State failed to present any evidence which would have permitted the trial court to determine either the content or nature of Begin's discussion with the defendant.  For example, Mitchell did not know, and thus the trial court was unable to weigh, whether Begin told the defendant that he was not free to leave, which is a circumstance suggesting a show of authority.  See Joyce, 159 N.H. at 445.

Yet, the trial court found that "there was no show of authority," and that the "officers did not curtail the Defendant's freedom of movement," "never requested the defendant to go anywhere," and "did no more than ask him questions about his identity."  However, these factual findings concerning what the officers said or did are unsupported by the record.  Mitchell could not testify as to what Begin said or did because he could not hear Begin's conversation with the defendant, and as Mitchell acknowledged, he had been directing his attention to the passenger until he was informed of the defendant's warrant.  It was thus improper for the trial court to make factual determinations regarding these circumstances or to consider the weight of these "facts" in its analysis.

Second, the trial court found that Mitchell testified that "the Defendant would have been free to leave until [the officers] learned that there was a warrant out for him."  Yet, Mitchell testified that the defendant would have been free to leave only after the officers "had figured out what [the defendant's

4

and his passenger's] business was," because at that point they "had dispelled any sort of suspicion." The trial court's finding regarding when Mitchell believed the defendant would have been free to leave is thus unsupported by the record.

We note that "the subjective beliefs and intent of the officers are relevant" to the seizure analysis "only to the extent they have been conveyed to the person confronted." United States v. Smith, 794 F.3d 681, 687 (7th Cir. 2015); see State v. Riley, 126 N.H. 257, 263 (1985). Mitchell told the passenger that the truck was the focus of a suspicious vehicle report, but, based upon the sparse evidence in the record, the trial court could not properly determine whether the defendant was similarly informed or told that he was not free to leave until the officers learned what his business was. The absence of such evidence prevented the trial court from determining the level of investigative pursuit the defendant was subjected to and from weighing whether this circumstance constituted a show of authority. See Joyce, 159 N.H. at 445 (concluding that the defendant was seized when police called for a narcotics dog, in part, because he could reasonably believe that he would not be allowed to leave until the police "completed their investigation"); see also Smith, 794 F.3d at 687 (weighing in favor of concluding that a seizure occurred the fact that officers "intended to and in fact did communicate to [the defendant] precisely what was going on — that he was a suspect in their investigation and was not free to leave before submitting to their questioning").

Third, the trial court could not consider how Begin identified the defendant because Mitchell did not and could not testify as to how Begin learned the defendant's name.[2] In its objection to the defendant's motion to suppress, the State asserted that the defendant was identified through his state identification card and an officer called his name into dispatch to determine his warrant status. Assuming that the defendant was identified in this manner, the trial court could not determine or consider whether Begin took and retained possession of the defendant's identification card while conducting the warrant check or promptly returned it to the defendant. Indeed, the State presented no evidence on this issue.

We acknowledge that an individual is not seized merely because an officer asks to examine his identification. Joyce, 159 N.H. at 445. An officer could, however, objectively communicate a show of authority rising to the level of a seizure if the officer retains possession of an individual's identification, because a reasonable person would not feel free to terminate the encounter under such circumstances. See McInnis, 169 N.H. at 570 (weighing the fact that an officer did not obtain identification documents from a defendant in favor of finding no seizure occurred); see also Commonwealth v. Lyles, 905

---

[2] Mitchell testified that he "believe[d]" Begin "would have called the [defendant]'s name into dispatch."

N.E.2d 1106, 1110 (Mass. 2009) (noting that when an officer requested and retained an individual's identification to run a warrant check, a "reasonable person simply would not relinquish his identification to the police and continue on with his business"); State v. Daniel, 12 S.W.3d 420, 427 (Tenn. 2000) (concluding that "when an officer retains a person's identification for the purpose of" running a warrant check, "no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification"). Without evidence regarding the manner by which Begin identified the defendant, however, the trial court could not weigh this circumstance.[3]

Finally, the trial court improperly concentrated on the defendant's demeanor in determining that no seizure occurred. It found that the defendant was "cordial and cooperative" with the officers and that he did not feel "uncomfortable or threatened," and weighed these factors in favor of finding that the defendant was not seized. Even if we assume that the limited record supports the trial court's findings on this circumstance, our case law instructs trial courts to "focus[] the definition of seizure on the police officer's conduct, and not the individual's conduct," because this "results in the same State constitutional implications for similar police conduct." Beauchesne, 151 N.H. at 813. It may be entirely possible for an individual to be "cordial and cooperative" while assiduously asserting his or her desire to terminate an encounter with the police, only to be told that compliance is required, which would constitute a show of authority suggesting seizure. See INS v. Delgado, 466 U.S. 210, 216-17 (1984) ("[I]f the person refuses to answer and the police take additional steps . . . to obtain an answer," then a seizure may have occurred); Morgan v. Woessner, 997 F.2d 1244, 1253-54 (9th Cir. 1993) (concluding that an individual was seized, in part, because he communicated to a police officer his unwillingness to cooperate and the officer continued to demand compliance).

Accordingly, we conclude that the State failed to meet its burden of showing that the defendant was not seized before the officers learned of the warrant for his arrest. Although we reach our conclusion irrespective of the defendant's race, we observe that race is an appropriate circumstance to

---

[3] We observe that the trial court considered circumstances relevant to the seizure analysis, such as the location of the police cruiser and that the defendant was not chased by an officer, that were supported by the record. See Beauchesne, 151 N.H. at 815; State v. Licks, 154 N.H. 491, 494 (2006). However, it did not consider several other relevant circumstances that were also supported by the record. For example, two officers wearing uniforms appeared at the scene, the encounter took place during the evening, in a private driveway, lasted less than 20 minutes, while the defendant was seated in a parked truck, the police officers did not activate their blue lights, and each officer approached an opposite side of the truck. See Joyce, 159 N.H. at 442, 445; Licks, 154 N.H. at 493; State v. Steeves, 158 N.H. 672, 676 (2009). Some of these circumstances weigh in favor, and some against, finding that a seizure occurred. Even taking them into account, however, we conclude that without evidence regarding the verbal exchange between the defendant and Begin, the State failed to meet its burden.

6

consider in conducting the totality of the circumstances seizure analysis. See State v. Hight, 146 N.H. 746, 750-51 (2001) (considering the races of a Caucasian police officer and an African-American suspect in deciding whether the State purged the taint of an unlawful detention followed by a consent to search). As the Seventh Circuit has concluded, "race is 'not irrelevant' to the question of whether a seizure occurred," but "it is not dispositive either." Smith, 794 F.3d at 688; see United States v. Mendenhall, 446 U.S. 544, 558 (1980) (noting that the defendant's race was "not irrelevant" to determining whether she consented to accompany police officers).

The State does not argue that the officers possessed reasonable suspicion to seize the defendant. See Joyce, 159 N.H. at 446 (explaining the reasonable suspicion standard that justifies an investigatory seizure). We therefore conclude that his seizure violated his rights under Part I, Article 19 of the New Hampshire Constitution and that the trial court erred in denying the motion to suppress. See State v. Morrill, 169 N.H. 709, 715 (2017). Because we conclude that the defendant prevails under the State Constitution, we need not undertake a separate federal analysis. See id. at 717.

For the reasons stated above, we reverse the denial of the defendant's motion to suppress. We reverse the defendant's conviction and remand.

Reversed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

7